Randy Behringer v. Raina Kay Vehrenkamp, et al.














IN THE
TENTH COURT OF APPEALS
 

No. 10-03-038-CV

     RANDY BEHRINGER,
                                                                              Appellant
     v.

     RAINA KAY VAHRENKAMP,
                                                                              Appellee
 

From the 170th District Court
McLennan County, Texas
Trial Court # 2002-424-4
                                                                                                                

MEMORANDUM OPINION
                                                                                                                

      Randy Behringer filed suit against Raina Kay Vahrenkamp for injuries he allegedly sustained
as a result of a collision between his pickup and a car being driven by Vahrenkamp. A jury
refused to find Vahrenkamp negligent, and the court rendered a take-nothing judgment. 
      Behringer timely filed a notice of appeal. The clerk’s record was filed in this Court on
February 4, 2003, and the reporter’s record was filed on February 13. Accordingly, Behringer’s
brief was due on Monday, March 17. See Tex. R. App. P. 38.6(a). To date, no appellant’s brief
has been filed.
      Appellate Rule 38.8(a)(1) provides that if an appellant fails to timely file a brief, the Court
may:
dismiss the appeal for want of prosecution, unless the appellant reasonably explains the
failure and the appellee is not significantly injured by the appellant’s failure to timely file
a brief.

Id. 38.8(a)(1).
      The Clerk of this Court sent the following notice to Behringer’s counsel on March 26, 2003:
Pursuant to Rules 38.8(a)(1) and 42.3 of the Texas Rules of Appellate Procedure, you
are notified that the Court may dismiss this appeal for want of prosecution unless, within
ten days of this letter, the appellant or any party desiring to continue the appeal files with
this court a response showing grounds for continuing the appeal.

Id. 38.8(a)(1), 42.3. The Court has received no response. Id. 42.3, 38.8(a)(1). Therefore, this
appeal is dismissed for want of prosecution. Id. 38.8(a)(1).
 
                                                                   PER CURIAM
Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Dismissed for want of prosecution
Opinion delivered and filed May 21, 2003
[CV06]



Times', serif">      Willie Frank Campbell was indicted for using a handgun (a deadly weapon) to threaten Waco
Police Officer Benjamin Rush with imminent bodily injury while Rush was attempting to arrest
Campbell—a first degree felony. Tex. Pen. Code Ann. § 22.02(a)(2), (b)(2) (Vernon Supp.
2004). A jury convicted Campbell, and he was sentenced to thirty-three years in prison. He
appealed, and in an opinion dated January 8, 2003, we overruled three of his four issues:
      1.   That the evidence is legally insufficient to support the conviction.
 
      2.   That his due process rights were violated because section 22.02 and the indictment refer
to assault on a “public servant,” but the indictment, charge, and verdict form refer to
assault on a “peace officer” and a “police officer,” and therefore the jury did not find
him guilty of the offense as alleged.
 
      3.   That the trial court’s deadly weapon finding should be set aside because of the mistake
complained about in issue two.

However, we sustained a fourth issue that the trial court erred by denying a jury-charge instruction
on a lesser-included offense of resisting arrest using a deadly weapon, a third-degree felony. We
reversed the judgment and remanded the cause.
      The State filed a motion for rehearing regarding the jury-charge issue. Chief Justice Davis,
who participated in this case, is no longer a member of the court, and he cannot participate in
deciding the motion for rehearing. A majority of the remaining justices that decided the case have
not voted to grant the motion. Accordingly, the motion will be denied. Tex. R. App. P. 49.3. 
I write separately, however, to address the State’s arguments about our original opinion on the
jury-charge issue.
Facts
      Campbell was wanted on outstanding warrants. After he was spotted, on foot, by law
enforcement officers, Officer Rush chased Campbell. Campbell had his hands in his pockets as
though he was attempting to discard something; he dropped something on the ground which Rush
did not retrieve. Rush said that when he caught Campbell, he told him “get on the ground,” but
Campbell did not comply. Rush grabbed Campbell around the upper body, described as a “bear
hug,” and tried to pull him down to hold him until other officers could arrive. He said Campbell
tried to pull away, then “kind of hump[ed] over, hump[ed] his back over” and said “get back.” 
Then, according to Rush, Campbell “kind of start[ed] straightening back up and [he had] a gun
in his hand.” Rush testified:
 
He’s got the gun in his hand and I’ve got him around his arm like this so he - I’m kind of -
I’m squeezing him, I’m like, “I’ve got to get away from him now,” because I can’t defend
myself because my arms are up around the top of him. So he’s got the gun in his hand and
he starts - he’s trying to turn to his left. When he turned to the left I just let him keep coming
and when he comes to the left, he’s got the gun up like this. . . . I just keep coming with him
and I just kind of just shove him into the wall. . . . I tried to get my distance from him . . ..

      Rush ran to get away from Campbell and did not turn around to look at him again. After they
parted, Campbell threw the gun up on the roof of a building and ran in the other direction. He
was later caught and subdued by three officers, including Rush. Rush testified that as the officers
held him down, he continued to resist.
      Campbell testified that when Rush “bearhugged” him from behind, he struggled with him,
trying to get away. Campbell said he bent down, and Rush was on his back. He twisted from left
to right, then “bent down again and then I came back up and that’s when I turned to the left and
he pushed me off.” He said, “I had a gun in my hand and I was running down the breezeway and
that’s when I threw [the gun] on top of the roof.” Campbell said he pulled out the gun only as he
began to run, and his purpose was to get rid of it. He denied ever saying “get back.”
      After Campbell was captured, the gun was retrieved from the roof. There was evidence it was
not loaded.
      The offense charged was necessarily based on Rush’s initial struggle with Campbell, rather
than the struggle that occurred when he was later captured. This is so because the indictment
charged that he used the weapon and the undisputed evidence is that he had discarded the gun
before the second struggle.
The Test
      The State’s motion for rehearing argues that Campbell was not entitled to a lesser-included
instruction, because resisting arrest using a deadly weapon is not a lesser-offense of aggravated
assault using a deadly weapon.
      The Court of Criminal Appeals has stated that the purpose of granting a lesser-included
instruction is to prevent (a) an acquittal even though the jury believed the defendant to be guilty
of the lesser-included offense, and (b) a “guilty” finding even though the jury did not believe the
defendant committed the greater offense. Bignall v. State, 887 S.W.2d 21, 24 (Tex. Crim. App.
1994). The policy of the Court is to liberally permit the instruction when warranted. Id.
      Whether a lesser-included instruction should be given is determined on a case-by-case basis. 
Bartholomew v. State, 871 S.W.2d 210, 212-13 (Tex. Crim. App. 1994). “Anything more than
a scintilla of evidence is sufficient to entitle a defendant to a lesser charge.” Bignall, 887 S.W.2d
at 23. The evidence may be proffered by the State or the defense; the evidence may be strong or
weak, unimpeached or contradicted. See Rousseau v. State, 855 S.W.2d 666, 672 (Tex. Crim.
App.), cert. denied, 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993); Bell v. State, 693
S.W.2d 434, 442 (Tex. Crim. App. 1985). The trier of fact is always free to selectively believe
all or part of the evidence admitted at trial. See Bignall, 887 S.W.2d at 24 (citing Bell, 693
S.W.2d at 443).
      A two-step test, described by the Court as the “Aguilar/Rousseau test,” is used to determine
whether the defendant was entitled to have the jury instructed on a lesser-included offense. 
Feldman v. State, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002) (citing Aguilar v. State, 682
S.W.2d 556, 558 (Tex. Crim. App. 1985), and Rousseau, 855 S.W.2d at 672). The first step asks
whether the offense is actually a lesser-included offense of the offense charged. Id. This inquiry
is determined under article 37.09 of the Code of Criminal Procedure, which defines lesser-included offenses in four ways.


 Id. (citing Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon
1981)). The second step asks whether the record contains some evidence that would permit a
rational jury to find that the defendant is guilty only of the lesser offense. Id. (citing Rousseau,
855 S.W.2d at 672). There must be some evidence from which a rational jury could acquit the
defendant of the greater offense while convicting him of the lesser-included offense. Id. The
evidence must establish the lesser-included offense as a “valid rational alternative” to the charged
offense. Id. at 751.
Is it a Lesser-Included Offense?
      Campbell asserted that, under subdivision (1) of article 37.09 and the facts of this case, the
offense of resisting arrest using a deadly weapon is a lesser-included offense of the charged
offense. Tex. Code Crim. Proc. Ann. art. 37.09(1) (“it is established by proof of the same or
less than all the facts required to establish the commission of the offense charged”). In the typical
situation under article 37.09(1), the greater offense has an “extra” element that the lesser offense
does not. Examples are the various “aggravated” statutes which increase the degree of an offense
by “adding” an element to the base offense. Tex. Pen. Code Ann. §§ 20.04 (aggravated
kidnapping), 22.02 (aggravated assault), 22.021 (aggravated sexual assault), 29.03 (aggravated
robbery), 37.03 (aggravated perjury), 49.09 (felony DWI). But when, as here, the contention is
made that the facts of the case raise the issue of a lesser-included offense, we must inquire whether
the State, in presenting its case to prove the offense charged, presented facts that could constitute
the lesser offense. Bartholomew, 871 S.W.2d at 212; Broussard v. State, 642 S.W.2d 171, 173
(Tex. Crim. App. 1982).
      As the court reiterated in Bartholomew:
Whether one offense bears such a relationship to the offense charged [so as to be considered
a lesser included offense] is an issue which must await a case by case determination, both
because the statute defines lesser included offenses in terms of the offense charged and
because it defines lesser included offenses in terms of the facts of the case.

Bartholomew, 871 S.W.2d at 212 (citing Day v. State, 532 S.W.2d 302, 315-16 (Tex. Crim. App.
1976) (opinion on reh’g)). Therefore, article 37.09(1) is applied to the evidence adduced at trial
to determine whether Campbell was entitled to a charge on the lesser-included offense of resisting
arrest. See Tex. Code Crim. Proc. Ann. art. 37.09(1). At the same time, we must consider the
admonition of Jacob v. State, where the Court counseled examination of: (1) the elements of the
offense as charged, (2) the statutory elements of the offense sought as a lesser-included offense,
and (3) the evidence presented at trial to show the elements of the charged offense. Jacob v. State,
892 S.W.2d 905, 907-08 (Tex. Crim. App. 1995). The inquiry focuses on the evidence offered
at trial regarding the specific allegations in the indictment and excludes any evidence proving other
matters not legally required to prove the allegations in the indictment. Id. at 908. Then, the court
asks if that evidence alone also establishes the elements of the alleged lesser-included offense. Id. 
If other evidence is presented that is not legally required to prove the offense as charged, but
which establishes the elements of another offense, article 37.09(1) does not apply. Id. at 908-09.
      The elements of aggravated assault, as charged, are: Campbell (1) intentionally or knowingly,



(2) threatened Rush with imminent bodily injury, (3) using or exhibiting a deadly weapon during
the commission of the assault, (4) knowing that Rush was a public servant, and (5) while Rush was
lawfully discharging an official duty. Tex. Pen. Code Ann. § 22.02(a)(2), (b)(2).
      The elements of resisting arrest pertinent to this discussion are: Campbell (1) intentionally,
(2) prevented or obstructed, (3) Rush, a person Campbell knew to be a peace officer, (4) from
effecting an arrest, search, or transportation of Campbell, (5) by using force against Rush, and (6)
used a deadly weapon to resist the arrest or search. Tex. Pen. Code Ann. § 38.03(a) (Vernon 
2003).
      It is not difficult to determine that (a) the evidence legally required to prove that Rush was a
public servant lawfully discharging an official duty also shows that Rush was a peace officer
attempting to effect an arrest and (b) evidence legally required to show that Campbell knew that
Rush was a public servant proves that Campbell knew Rush was a police officer. The State does
not contest that analysis.
      The primary dispute of the parties centers on whether the evidence that is legally required to
show that Campbell threatened Rush with imminent bodily injury also establishes that Campbell
obstructed his arrest by using force against Rush. Rush testified that Campbell did not point the
gun at him before he ran. Specifically, he said, “No, I had hold of him where he couldn’t do
that.” Asked, “But you never saw the gun pointed at you, did you?” Rush replied, “No, I didn’t
stay there long enough.” Campbell testified that he took the gun out only to “get rid of” it. Rush
testified Campbell said, “get back.” Campbell denied that he made the statement.
      There is no direct evidence of a threat. Furthermore, a jury might have found that Campbell
did not say “get back,” did not point the gun at Rush, did not threaten him with it, and intended
only to discard the unloaded gun. In that event, the jury would have found him not guilty of
aggravated assault. But, because of the struggle, a rational jury could have found Campbell guilty
of resisting arrest. Thus, applying Jacob, the same or less than all the facts required to prove
Campbell threatened Rush with imminent bodily harm also established a “use of force against”
Rush by Campbell in resisting arrest. See Sutton v. State, 548 S.W.2d 697, 699 (Tex. Crim. App.
1977) (when aggravated assault is committed by bodily injury, resisting arrest is a lesser-included
offense because the “use of force” element of resisting arrest was proved by the same evidence
as that which proved the infliction of bodily injury); Bryant v. State, 923 S.W.2d 199, 206 (Tex.
App.—Waco 1996, pet. ref’d) (evidence of non-cooperation combined with violent swings of the
body and a forward movement causing the officer and the defendant to fall off a porch was
sufficient to establish resisting arrest).
      The parties’ secondary dispute is about the gun. The resisting arrest statute requires Campbell
to have “used” the gun, whereas under the aggravated assault statute, Campbell could have either
“used” or “exhibited” the gun. Thus, if the two terms mean something different and the evidence
could prove only an “exhibition,” then resisting arrest cannot be a lesser-included offense under
these facts.
      The meaning of the terms “use” and “exhibit” in relation to a deadly weapon has been
discussed in the context of a deadly weapon finding under article 42.12, § 3g(a). Tex. Code
Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (Vernon Supp. 2004). In Patterson v. State, the Court
of Criminal Appeals applied the Code Construction Act as required by the Penal Code.


 Patterson
v. State, 769 S.W.2d 938, 940 (Tex. Crim. App. 1989); Tex. Pen. Code Ann. § 1.05 (Vernon
2003). Generally, the Court said, in relation to a deadly weapon, the term “use” means to utilize,
employ, or apply the deadly weapon to achieve an intended result. Patterson, 769 S.W.2d at 941. 
“Use” includes simple possession if the possession facilitates the commission of the associated
felony. Id. To “exhibit” a deadly weapon means to consciously show, display, or present for
viewing the deadly weapon during the commission of a crime. Id. “[O]ne can ‘use’ a deadly
weapon without exhibiting it, but it is doubtful one can exhibit a deadly weapon during the
commission of a felony without using it.” Id. Applying these definitions in the present case, it
is clear from the evidence that Campbell exhibited the gun because it was “consciously show[ed],
display[ed], or present[ed] for viewing” during the commission of a crime. Id. And because “it
is doubtful one can exhibit a deadly weapon during the commission of a felony without using it,”
the jury was not precluded from finding that Campbell “used” the gun. Id.
      “Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser
charge.” Bignall, 887 S.W.2d at 23. Producing the gun could be viewed as facilitating
Campbell’s resisting arrest because it caused Rush to release Campbell, who then fled. The jury
could have found that, by producing the gun, Campbell utilized, employed, or applied it to achieve
an intended result. Id. Therefore, the same or less facts required to establish that Campbell used
or exhibited the gun to threaten Rush also established that Campbell used the gun to resist arrest.
      Resisting arrest is, under the specific facts of this case, a lesser-included offense of aggravated
assault. See Tex. Code Crim. Proc. Ann. art. 37.09(1). Thus, the first step of the
“Aguilar/Rousseau test” is satisfied. Feldman, 71 S.W.3d at 750.
Was it a Valid Rationale Alternative?
      The second step of the test is whether resisting arrest was a “valid rational alternative” to a
conviction for aggravated assault? There is no direct evidence that Campbell threatened Rush. 
Campbell and Rush testified differently about whether Campbell said, “get back.” There is no
evidence that Campbell pointed the gun at Rush; Campbell testified that his intent was only to “get
rid of” the gun. In the absence of evidence that Campbell pointed the gun at Rush, the jury could
have believed that he did not intend to threaten Rush with it. Furthermore, that Campbell
struggled with Rush in an effort to avoid being arrested is uncontroverted. When Campbell
displayed the gun, Rush released him and he ran. Thus, the circumstantial evidence the State
presented to prove that Campbell threatened Rush with imminent bodily injury was open to a
different interpretation by the jury, i.e., that Campbell intended only to resist arrest. See Saunders
v. State, 840 S.W.2d 390, 392 (Tex. Crim. App. 1992).
      This case is distinguishable from Lofton v. State, where the Court of Criminal Appeals found
resisting arrest not to be a rational alternative to assault on a public servant. Lofton v. State, 45
S.W.3d 649, 651 (Tex. Crim. App. 2001). There, the defendant slapped the officer’s hands away,
struck him twice in the face, picked him up and threw him down on a table—breaking it, and
jumped on top of him. Id. at 650. The defendant testified that he did not assault the officer, nor
did he resist arrest. Id. at 651. As the court noted, “Even if [the defendant] had intended only
to prevent his arrest, the force used by [the defendant] against [the officer], at the very least,
recklessly caused [the officer] to suffer a bodily injury. Id.
      A rational jury could have found that Campbell resisted arrest rather than that he assaulted
Rush. See Feldman, 71 S.W.3d at 750.
Harm Analysis
      Having found that the trial court erred in not giving the instruction, a harm analysis is
required. When a complaint about an error in the charge is properly preserved—as here by
requesting the instruction—reversal is required if the error caused “some” harm to the accused. 
Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 1981); Ovalle v. State, 13 S.W.3d 774, 786
(Tex. Crim. App. 2000) (quoting Almanza, 686 S.W.2d at 171). “[I]n the context of Almanza,
supra, and Article 36.19, supra, the presence of any harm, regardless of degree, which results
from preserved charging error, is sufficient to require a reversal of the conviction. Cases
involving preserved charging error will be affirmed only if no harm has occurred.” Arline v.
State, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986).
      The Court of Criminal Appeals has held that failure to give a lesser-included instruction is
“some” harm because the jury is not given the option to convict on the lesser-included offense. 
E.g., Saunders v. State, 913 S.W.2d 564, 571 (Tex. Crim. App. 1995) (citing Beck v. Alabama,
447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980)) (danger is that the jury will convict of
some offense, i.e., the greater offense, only because of no alternative); Ross v. State, 861 S.W.2d
870, 877 (Tex. Crim. App. 1992); Mitchell v. State, 807 S.W.2d 740, 742 (Tex. Crim. App.
1991); also Jiminez v. State, 953 S.W.2d 293, 299-300 (Tex. App.—Austin 1997, pet. ref’d).
      If the absence of the lesser-included offense instruction left the jury with the sole option either
to convict the defendant of the charged offense or to acquit him, a finding of harm is essentially
automatic because the jury was denied the opportunity to convict the defendant of the lesser
offense. Saunders, 913 S.W.2d at 571. In cases such as this, there is a distinct possibility that
the jury, believing the defendant to have committed some crime, but given only the option to
convict him of the greater offense, may have chosen to find him guilty of that greater offense
rather than to acquit him altogether, even though it had a reasonable doubt that he really
committed the greater offense. Id. (citing Beck, 447 U.S. at 634, 100 S.Ct. at 2388).
      The jury had two options in this case: find appellant guilty of aggravated assault or acquit
him. It chose to convict him and assessed punishment at 33 years' imprisonment. The range of
punishment for aggravated assault is confinement for 5 to 99 years or life. Tex. Pen. Code Ann.
§ 12.32 (Vernon 2003). At trial, Campbell requested a charge on the lesser-included offense of
resisting arrest, with a range of punishment of 2 to 10 years confinement. Id. § 12.34 (Vernon
2003). Appellant was harmed because the jury was not given the opportunity to find him guilty
of the lesser-included offense of resisting arrest, which was a valid rational alternative based on
the evidence.
Conclusion
      Because the instruction should have been given, and because there was harm, the conclusions
in the opinion are correct. Accordingly, I concur in the denial of the State’s motion for rehearing.

                                                                   BILL VANCE
                                                                   Justice

Concurring opinion issued and filed on January 14, 2004
Publish